**UNITED STATES v. ADAMS.**

Cr. No. 8281.

United States District Court
D. North Dakota,
Northwestern Division.

Oct. 23, 1953.

732

P. W. Lanier, U. S. Atty., of Fargo, N. D., J. P. Stevens, Asst. U. S. Atty., of Minot, N. D., for plaintiff.

Roy A. Ilvedson and Kenneth G. Pringle (of Ilvedson, Pringle & Herigstad), and Halvor L. Halvorson, Jr., of Minot, N. D., and Charles L. Foster, of Bismarck, N. D., for defendant.

VOGEL, District Judge.

The indictment herein charges the defendant in three counts with a violation of 18 U.S.C.A. § 281. The pertinent part of that section is as follows:

"Whoever, being a Member of or Delegate to Congress, or a Resident Commissioner, either before or after he has qualified, or the head of a department, or other officer or employee of the United States or any department or agency thereof, directly or indirectly receives or agrees to receive, any compensation for any services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, before any department, agency, court martial, officer, or any civil, military, or naval commission, shall be fined not more than $10,000 or imprisoned not more than two years, or both; and shall be incapable of holding any office of honor, trust, or profit under the United States."

In substance, Count 1 of the indictment, which is illustrative of Counts 2 and 3, charges: That during all of the time mentioned therein there was pending in the United States District Court for the District of North Dakota a proceeding entitled United States v. 11,993.-32 acres of land in Mountrail and McKenzie Counties, North Dakota (U. S. v. 679.19 Acres of Land, More or Less in McLean County, N. D., 113 F.Supp. 590); in which the United States was directly interested as party plaintiff and which proceeding was brought under the laws of the United States of America pertaining to eminent domain, in which certain parties named therein had appeared and claimed ownership to certain lands involved in the proceeding and had demanded compensation for the taking of such lands to be determined by trial by a jury.

That during all of the time mentioned in the count the defendant, Felix Adams, was an employee of the United States employed by the Soil Conservation Service, and that he did, between August 15, 1952, and October 14, 1952, within the District of North Dakota, directly agree to receive compensation for services to be rendered by him for the claimants in said action in that he agreed to appraise the lands of the claimants as a soil expert and to testify as an expert witness on behalf of said claimants as to the value of their respective lands upon the trial of said proceeding to be had in the United States District Court of North Dakota, upon which trial there would be at issue the amount of compensation the United States would be required to pay for the lands taken, and that for such appraisal service he and an associate of his were to receive a fixed compensation.

The defendant, through his counsel, has now moved that the indictment be dismissed upon the ground that it does not state facts sufficient to constitute an offense against the United States.

A hearing on the motion to dismiss was held and counsel on both sides pre-

sented orally their views with reference to the problem confronting the Court.

It is the position of the Government that, even though the indictment only refers to the proceeding as pending in the District Court of the United States for the District of North Dakota, that the subject matter or controversy upon which the suits were based was also pending before the Department of the Army, more specifically the Corps of Engineers for the Garrison District, and that therefore the defendant, in accepting compensation, was guilty of a violation of the criminal statute quoted above.

Taking judicial notice of its own records, this Court refers to the three cases noted in the indictment, and more specifically to its opinion in United States v. 679.19 Acres of Land, etc., found in D.C., 113 F.Supp. 590, 593:

"Point III.

"The Court erred in permitting the witness Felix Adams to testify.

"Felix Adams, at the time of trial, was an employee of the United States connected with the Soil Conservation Service. He was on annual leave from his employment at the time of trial and present in court in answer to a subpoena in behalf of the landowners. He had been attempting to prepare himself to become an expert land appraiser. He had been employed by the landowners to examine their various tracts of land and testify mainly with reference to the different soils and their productivity. Government counsel directed attention to Title 18 U.S.C.A. § 283, which, in substance, prohibits an officer or employee of the United States or any department or agency thereof from acting as agent or attorney for prosecuting any claim against the United States or aiding or assisting in the prosecution or support of such claim other than in the proper discharge of his official duties.

"Government counsel protested the use of the witness Adams by the landowners. The matter was discussed at some length in chambers. Adams was informed of the statute relied upon by the Government and subsequently, on the witness stand, refused to testify on the grounds that to do so might incriminate him. The Court felt that the statute was not applicable to the situation then confronting the witness and held that his testimony was competent and directed him to answer. Incidentally, in that regard it was brought out that in examining the landowners' farms Adams had done so on his own time and had made use of nothing belonging to the Government with the possible exception of tract maps which were available to anyone who asked for them.

"The identical situation with reference to the witness Adams arose in the second group of condemnation cases which was tried immediately following this one. In that case, the Government's objection to Adams' testimony was much more strenuously argued. The Court felt in both cases and still believes that the statute relied upon by the Government was not a bar to the giving of the testimony by the witness Adams for several reasons:

"First, the statute did not have in contemplation a situation such as that with which we are here dealing. The statute was passed by the Congress for the purpose of preventing Government employees from making use of private Government information to assist persons who had claims against the United States.

"Second, it was also passed by the Congress for the purpose of prohibiting Government employees who had access to Government files from obtaining therefrom information regarding persons who might possibly have claims against the Government and then soliciting the representation of the owners of such claims or assisting them in some way, thereby earning fees.

"In addition to the foregoing, the Court does not believe that the rights of landowners in condemnation cases constitute 'claims' against the Government within the purview of the statute. The landowners here are not the plaintiffs. They are not claimants. They are, in fact, the defendants. The Government

itself is the plaintiff and attempts by these actions to take the lands and has asked this Court to give it title thereto. As a natural part of that process of condemnation and by reason of the Fifth Amendment to the Constitution, it is necessary that the market value of these lands be established.

"The witness Adams, while a Government employee, was employed by the landowners during his spare time and his annual leave to examine the soil on their various farms and accordingly give testimony with respect thereto. He obtained the consent of his superiors before he undertook employment by the land-owners.

"The Court is of the opinion that no error was committed in allowing him to testify."

The present problem, although it deals with the same witness in the same cases and the identical facts, is, of course, different in that it involves an alleged violation of 18 U.S.C.A. § 281, supra. It will be noted first that that section specifically refers to "services rendered or to be rendered, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation, arrest, or other matter in which the United States is a party or directly or indirectly interested, before any *department, agency, court martial, officer, or any civil, military, or naval commission * * *.*" (Emphasis supplied.) No reference is made to any proceeding pending in or before any "court".

A legislative history of the specific statute with which we are here concerned illustrates the significance of the omission of the word "court". This background is given, incidental to a different problem, in the dissenting opinion in Burton v. United States, 1906, 202 U.S. 344, 398, 26 S.Ct. 688, 706, 50 L.Ed. 1057:

"Again, the history of the passage of the bill which culminated in this statute emphasizes the views already expressed. The bill was introduced into the Senate December 23, 1863, by Senator Wade.

As prepared, it forbade the appearance of a Senator or member of the House of Representatives *in any court* as well as Department, etc. On February 10, 1864, the Committee on the Judiciary reported in favor of striking out the following words (p. 555):

" 'No member of the Senate or of the House of Representatives of the United States shall, during his continuance in office, hereafter appear or act as counsel, attorney, or agent in any cause or proceeding, civil or criminal, *in any court*, civil, criminal, military, or naval, or before any commission, in which the United States is a party or directly or indirectly interested, or receive any compensation of any kind, directly or indirectly, for services of any description rendered by himself or another in relation to any such cause or proceeding;' and they were stricken out.

"On page 561 is this statement by Senator Trumbull, the chairman of the committee:

" 'This is not a bill to prevent attorneys from practising in courts of law, but it is a bill to prevent Representatives and Senators in Congress and officers of the government, who are paid for their services, from receiving a compensation for advocating claims in the departments and before the bureaus of the government, and before courts-martial. That is the particular question that is pending.' " (Emphasis supplied.)

The deletion of the words "any court" and the failure in subsequent revisions to refer to proceedings pending before "any court" would appear to conclusively rule out the idea that Congress intended the section to be applicable to proceedings before a court.

▋ The purpose of the statute is plain. It was aimed at preventing Congressmen, officers and employees of the United States Government from using the weight of their positions or their influence in connection with matters which were to be determined before any department, agency, court martial, officer or commission and was to assist in

insuring the integrity of such departmental determinations. Burton v. United States, supra, 202 U.S. 368, 26 S.Ct. 688; United States v. Reisley, D.C.N.J. 1940, 35 F.Supp. 102, 104. A Congressman, officer or employee of the United States, in appearing in a court before a judge or jury, could have no such weight or influence as might be present if the appearance were before some Governmental department or agency.

For this Court now to spell into the statute the idea that Congress intended to include proceedings before courts would be nothing more or less than judicial legislation. Criminal statutes are to be strictly construed. Thus it is said in United States v. Chemical Foundation, 272 U.S. 1, 18, 47 S.Ct. 1, 7, 71 L.Ed. 131:

> "It is a penal statute and is not to be extended to cases not clearly within its terms or to those exceptional to its spirit or purpose. United States v. Noveck, 271 U.S. 201, 46 S.Ct. 476, 70 L.Ed. 904; Baender v. Barnett, 255 U.S. 224, 226, 41 S.Ct. 271, 65 L.Ed. 597; Territory of Hawaii v. Mankichi, 190 U.S. 197, 212, 23 S.Ct. 787, 47 L.Ed. 1016; United States v. Kirby, 7 Wall. 482, 486, 19 L.Ed. 278; Bishop on Statutory Crimes, (3d Ed.), § 235."

See also United States v. Resnick, 299 U.S. 207, 209, 57 S.Ct. 126, 81 L.Ed. 127; Donnelley v. United States, 276 U.S. 505, 511, 48 S.Ct. 400, 72 L.Ed. 676; Fasulo v. United States, 272 U.S. 620, 628, 47 S.Ct. 200, 71 L.Ed. 443; United States v. Wiltberger, 5 Wheat. 76, 95, 5 L.Ed. 37.

The Government's theory that the cases in which the defendant was employed by the former landowners were also pending before the Corps of Engineers, Department of the Army, cannot overcome the difficulty. The indictment itself refers to no proceeding pending before any department, but alleges only that the proceeding was before this Court. Furthermore, even if it be assumed that the proceeding was also necessarily pending before the Corps of Engineers, the indictment cannot stand because it is not alleged that the services were rendered or were to be rendered before such department. Nowhere in the indictment is the charge found, or even inferred, that the defendant *received* or agreed to receive " * * * *compensation for any services* * * * in relation to any proceeding * * * *before any department* * * * ", etc. (Emphasis supplied.) See United States v. Reisley, supra. It is alleged only that the defendant agreed to appraise the lands and to testify as an expert witness upon the trial in court. The Government's theory is not tenable.

For the reasons stated, the Court is of the opinion that the indictment fails to state facts sufficient to constitute a violation of the statute referred to. The motion to dismiss should be granted.

It will be so ordered.